NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSIAH ENGLISH, III, *Appellant.*

No. 1 CA-CR 23-0345

FILED 07-23-2026

Appeal from the Superior Court in Maricopa County
No.  CR2017-105183-001
The Honorable Jennifer Ryan-Touhill, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Advisory Counsel for Appellant*

Josiah English, III, Buckeye
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Andrew J. Becke and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

¶1        Defendant Josiah Adam English III (English) appeals his conviction and natural life prison sentence for the murder of B.G.[1] and his convictions and resulting sentences for two counts of endangerment. Because English has shown no error, his convictions and sentences are affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2        At about 7:00 a.m. on January 31, 2017, police officers responded to a shooting report. Upon arrival, officers saw B.G.'s body with numerous gunshot wounds. She was pronounced dead at the scene. Witnesses told police they heard gunshots and found B.G. on the ground, with her two children nearby. One witness walking around that time said that he saw a dark Ford Expedition enter the complex then speed away.

¶3        Officers learned that B.G. and English, her ex-husband, were in a custody battle involving their two children. B.G. was living at a domestic violence shelter with the children when she was killed. The day before the shooting, B.G. and English had a contested family court hearing where they both testified. B.G. was seeking court approval to take the children to Mexico.

¶4        Officers conducted surveillance on English's residence. Once English arrived, officers contacted him as he was walking to his apartment. Officers took him to police headquarters, where he provided some basic information. English was then arrested. In early February 2017, English was indicted on one count of first-degree murder and two counts of endangerment, and the court appointed counsel to represent him. The two endangerment charges stemmed from B.G. being shot with her two children nearby.

---

[1] Initials are used to protect the victim's privacy. *State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1 (App. 2003).

**¶5**     Later in February 2017, English filed his first motion to proceed as a self-represented litigant. In April 2017, English withdrew that motion. In May 2017, the court designated the case as complex. In July 2017, English filed his second motion to proceed as a self-represented litigant.

**¶6**     In July 2017, the State filed a notice of intent to seek the death penalty. Although the State withdrew that notice in November 2021, the matter was managed as a death penalty case for more than four years.

**¶7**     In February 2018, English made self-represented filings asserting his Sixth Amendment right to a speedy trial and requesting a ruling on his second motion to proceed as a self-represented litigant. The court held that motion "in abeyance" at a status conference later that month.

**¶8**     After discussing competency at a March 2018 hearing, in April 2018, the court ordered English to participate in Rule 11 proceedings. That resulted in significant delays, which the record indicates was caused in large part by English's refusal to participate in the proceedings. Ultimately, in January 2020, the court found that English was competent. In February 2020, after conducting an appropriate colloquy, the court found English "knowingly, voluntarily and intelligently" waived his right to counsel and granted his request to represent himself. The court appointed two attorneys to serve as advisory counsel for English.

**¶9**     During the time from indictment to trial, English went through at least three sets of attorneys. He also went through three sets of advisory counsel as a self-represented litigant. He filed numerous motions, including a motion to recuse the Maricopa County Superior Court Judiciary and a motion to disqualify the Maricopa County Attorney's Office.[2] English also filed various motions seeking to assert his speedy trial rights.

---

[2] English filed at least two petitions for special action with this court and the Arizona Supreme Court. This court declined to accept special action jurisdiction. In this appeal, English moved to recuse this entire court, which the Chief Judge denied. English also filed a request for leave to file a visual recording of a particular hearing, which this court granted. English asserts the Judge in that hearing treated him as an "inferior, second-class human being" by "yelling" at him. Suspecting that because there was no minute entry for that hearing, English states the conduct "could probably be viewed as judicial misconduct and violating 'courtroom decorum.'" This court has reviewed the visual recording and finds no judicial misconduct.

¶10        At a 26-day trial, which began in March 2023, the State called various witnesses. English's defense was that someone else committed the offenses. After the State rested in its case in chief, the court denied English's motion for directed verdict. At the close of the State's rebuttal case, English moved for a mistrial, which the court denied both initially and twice on reconsideration. The court also denied his motion for judgment of acquittal after the close of the evidence.

¶11        After deliberation, the jury found English guilty as charged. The court denied English's post-verdict motions for mistrial and for new trial, based on alleged issues with the jury.

¶12        English was sentenced to natural life in prison for the murder conviction and concurrent one year prison terms for the endangerment convictions. This court has jurisdiction over English's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2026).[3]

## DISCUSSION

### I.    English's Sixth Amendment Right to a Speedy Trial Was Not Violated.

¶13        English argues that his "constitutional right to a speedy trial" was "violated and as a result, the only remedy is a dismissal of the criminal charges with prejudice" under *Barker v. Wingo*, 407 U.S. 514 (1972). English asserts that "[d]uring the pretrial phase of the criminal case associated with this appeal, [he] asserted [his] constitutional right to a speedy trial on 20 (twenty) separate occasions in the Superior Court, which includes [his] assertions made in writing and in open court."

¶14        English maintains that judges in his case "perpetually denied and violated" his right to represent himself, which led to, or played some part in, the violation of his speedy trial rights. English alleges the judges were "literally harassing" him by not allowing him to represent himself "with absolutely no legitimate cause." English also asserts that one judge was manipulating "to somehow make it appear in the record of this case that [he] was suffering from some type of 'mental illness,' which would give [the judge] the authority to force a Defense Attorney on [him], and would

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

circumvent [his] right to self-representation." English contends that requiring competency proceedings "was entirely frivolous."

¶15        English's speedy trial argument is based on the Sixth Amendment to the United States Constitution. On appeal, issues of constitutional law are reviewed de novo, deferring to the superior court's factual determinations absent an abuse of discretion. *See State v. Parker*, 231 Ariz. 391, 398 ¶ 8 (2013). "In addressing the alleged denial of the Sixth-Amendment right to a speedy trial, the court must typically consider: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant has demanded a speedy trial; and 4) the prejudice to the defendant." *State v. Lukezic*, 143 Ariz. 60, 69 (1984) (citing *Barker*, 407 U.S. at 530-32). The most important of these factors is resulting prejudice; the least important is the length of the delay. *See State v. Henry*, 176 Ariz. 569, 579 (1993) (citing cases).

¶16        English was taken into custody on January 31, 2017, indicted on February 9, 2017, and trial began on March 22, 2023, more than six years later. The length of this delay is sufficient to trigger the full *Barker* analysis. *See Doggett v. U.S.*, 505 U.S. 647, 652 & n.1 (1992) (citing authority).

¶17        The second *Barker* factor looks at the reasons for the delay. *See Parker*, 231 Ariz. at 398 ¶ 10 (citing cases). English alleges "that the overwhelming majority of the pretrial delay in this criminal case particularly 4[] years, of the total 6 years, one month, and 22 days, is attributed to, and falls squarely on the shoulders of the government." English concedes that he is responsible for the other two years (of the more than six years from indictment to trial). English claims that "the majority" of the four years he challenges (from 2017 through 2021) "can be attributed to various judges within the Maricopa County Superior Court System who repeatedly denied [his] constitutional right to self-representation without legitimate cause."

¶18        English asserts that his one million dollar "cash only" bond "guaranteed" that he "would remain incarcerated" pending trial. But pretrial release and a speedy trial are two different things. English next asserts that the "prosecutors from the Maricopa County Attorney's Office, on a regular basis, abuse and manipulate the Arizona death penalty statute" which he alleges was "frivolous" and was used to "keep [him] arbitrarily and perpetually locked up." The record, however, suggests it took the State about five months to determine whether it would seek the death penalty. Both the State and English stipulated to extend the deadline for the notice of intent to seek the death penalty before that notice was filed in July 2017. English's own actions by stipulating to continuances weigh against a Sixth

Amendment violation. *See Vermont v. Brillon*, 556 U.S. 81, 90-93 (2009) ("[I]n applying *Barker*, we have asked 'whether the government or the criminal defendant is more to blame for th[e] delay.'") (quoting *Doggett*, 505 U.S. at 651).

**¶19** English next argues he was "forced . . . to endure more than" 21 months "of unwarranted mental competency hearings," which he alleges "were frivolous" and delayed his right to self-representation. At a status conference in March 2017, the court addressed English's motion to proceed as a self-represented litigant and was informed by counsel about the motion to extend time to seek the death penalty. The court asked English about his qualifications and why he felt he should represent himself, considering the complexity of the case. Based on the argument presented, the court denied English's request to represent himself but informed him he would have the opportunity to urge the issue again, suggesting he wait until the deadline for the State to make their decision regarding the death penalty. English argues the judge did not provide him with a *Faretta v. California*, 422 U.S. 806 (1975) colloquy "that our U.S. Supreme Court has instructed courts and Judges to provide to a Defendant in a criminal case who desires to represent himself or herself in that case." In support of this argument, English cites to *United States v. Mohawk*, 20 F.3d 1480 (9th Cir. 1994). To the extent *Mohawk* is instructive, *see State v. Swoopes*, 216 Ariz. 390, 401 ¶ 35 (App. 2007) (federal circuit court decisions interpreting the Constitution are not binding on Arizona Courts), the case does not stand for the proposition that the colloquy must be given at a particular time, but rather that there must be such a colloquy before permitting a defendant to represent himself. *Mohawk*, 20 F.3d at 1484-485.

**¶20** At a March 2018 hearing where English again sought to proceed as a self-represented litigant, the superior court noted the death penalty was being sought and the court's practice in such a case was to "get some evaluations done to help" determine competency. In doing so, the court told English that could "cause a delay." In April 2018, the court found there were reasonable grounds for competency proceedings, including English's inability or unwillingness to comply with court rules, despite being represented by counsel. By that time, English already had gone through three different sets of attorneys, which led to the court's concern that English might have "a condition that's afflicting him. I don't know if it rises to the level that he's unable to appreciate the nature of the proceedings." The court then ordered English to participate in a Rule 11 proceeding.

¶21 The Rule 11 process was then delayed, in significant part, by English's refusal to participate based on his view that he had a Fifth Amendment right to remain silent. Further delay was properly attributed to English's motion to change counsel and proceed as a self-represented litigant. Moreover, the court had noted the need to determine competency before deciding whether English properly could waive his right to counsel. *See State v. Djerf*, 191 Ariz. 583, 591 ¶ 21 (1998). In February 2020, soon after he was found competent, the court granted English's request to proceed as a self-represented litigant.

¶22 The superior court designated the case complex, which is supported by the record. There are more than 1,100 filings in the superior court record, many of which English filed. Those filings, which required resolution by the court, caused further delay. Thus, English's stipulations, the time it took to determine competency and his own conduct account for more than three of the four years English relies upon in claiming a denial of his speedy trial rights.

¶23 The third *Barker* factor addresses whether a defendant timely asserted his right to a speedy trial. *See Parker*, 231 Ariz. at 399 ¶ 15. English first asserted his right to a speedy trial, while represented by counsel, in February 2018 and continued to do so until November 2020, when he advised the court that he intended to move to continue the trial. As discussed above, during much of that time, English's own actions and inactions caused delay. And after November 2020, English made additional requests to continue trial, undercutting his speedy trial violation claim. *See Brillon*, 556 U.S. at 92-93.

¶24 "The fourth and most important *Barker* factor is whether the delay prejudiced the defendant." *Parker*, 231 Ariz. at 399 ¶ 16 (citation omitted). To assess prejudice, the court considers the interests the speedy trial right protects including: "(1) preventing 'oppressive pretrial incarceration,' (2) minimizing 'anxiety and concern of the accused,' and (3) limiting 'the possibility that the defense will be impaired.'" *State v. Miller*, 234 Ariz. 31, 37 ¶ 12 (2013) (citing *Barker*, 407 U.S. at 532); *accord Parker*, 231 Ariz. at 399 ¶ 16. "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Parker*, 231 Ariz. at 399 ¶ 16 (quoting *Barker*, 407 U.S. at 532).

¶25 English asserts his time in pretrial custody was "emotionally and physically traumatizing." Adding that his parental rights to his children were terminated during this criminal proceeding, English states

that "[b]eing cut off and unable to see or speak to [his] children" caused his heart "to be filled with deep, deep sorrow." English argues he was "fed the same exact disgusting food every day," dealt with "hunger pains" and detention officers and sergeants "repeatedly tampered with [his] legal mail and [his] confidential legal communications." English adds he suffered "anxiety," "mental anguish" and that his "constitutional due process rights to conduct a prompt and thorough defense investigation" were violated. Finally, English asserts the delay caused his memories and the memories of the witnesses to fade, which helped the State and caused "extreme prejudice" to his defense.

¶26        In his reply brief on appeal, English asserts he demonstrated that "proof of prejudice" is "not required because [he] was under pretrial confinement for more than six years." However, the duration of pretrial detention is not, alone, a Sixth Amendment speedy trial violation. As noted in other cases, lengthy pre-trial incarceration by itself does not result in a Sixth Amendment violation. *See Parker*, 231 Ariz. at 399 ¶ 18 (trial occurring "almost four years" after defendant charged with murder, during which he was in custody, did not show Sixth Amendment violation); *see also State v. Spreitz*, 190 Ariz. 129, 140 (1997) (noting five years' pretrial detention "may have increased defendant's anxiety[,] . . . [but] the delay did not prejudice his ability to defend against the state's claims"). Similarly, English's increased anxiety and concern while in custody, including that his parental rights to his children were terminated during that time, does not compel a finding that his Sixth Amendment rights were violated. *See* Jimmie E. Tinsley, *Prejudice Resulting from Unreasonable Delay in Trial*, 7 AM. JUR. PROOF OF FACTS 2D 477 § 8 (Feb. 2026 Update) (noting majority of decisions "giv[e] little or no weight to proof on the issues of anxiety and pretrial incarceration") (footnote omitted).

¶27        English argues that under *United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018), *United States v. Brown*, 169 F.3d 344 (6th Cir. 1999) and *Doggett*, "affirmative proof of impairment of the defense is not required in order to find a sixth amendment violation," because the "'oppressive pretrial incarceration' is the prejudice." Neither *Tigano* nor *Brown* are binding here. *See Swoopes*, 216 Ariz. at 401 ¶ 35. Moreover, *Tigano* found "nearly seven years of pretrial incarceration," based on action and inaction that fell "largely on the district court and government attorneys," resulted in "a flagrant violation" of defendant's Sixth Amendment rights. 880 F.3d at 619. As discussed above, there is nothing like that here. And *Brown* involved "the government's negligence in pursuing" the defendant, with the court noting the government was "responsible for a pretrial delay of more than sixty months," during which a witness defendant wished to call

had died and was unavailable to provide exculpatory testimony. 169 F.3d at 351. Again, those are far different facts than presented here.

¶28        *Doggett* recognized that "pretrial delay is often both inevitable and wholly justifiable," and clarified that if the government had pursued the defendant with "reasonable diligence from his indictment to his arrest, his speedy trial claim would fail." 505 U.S. at 656. The facts here are quite different. In November 2020, after he had asserted his Sixth Amendment speedy trial rights 20 times, English informed the court it would "literally be impossible for [him] to be prepared to proceed to trial by the February 1st 2021 trial date." This admission that he was not ready for trial in February 2021 significantly undercuts his argument that his Sixth Amendment rights were violated when trial was not held sooner.

¶29        In November 2020, English also wrote that "there is still so much defense investigation that needs to take place in order for me to be adequately prepared to proceed to a trial." In December 2020, English successfully moved to continue trial for "at least 7 (seven) months" "so that he may be adequately prepared to proceed to a trial on the merits of this case." Again, these concessions by English himself in late 2020 that he was not ready for trial, and would not be until late 2021, undercut his arguments that his Sixth Amendment rights were violated when he was not tried years earlier. Moreover, the record does not support the notion that the State did not pursue English with "reasonable diligence." *Doggett*, 505 U.S. at 656.

¶30        Likewise, English's argument that fading memories of witnesses prejudiced him is insufficient. English argues that some of the witnesses at trial "admitted on the witness stand that their memories had diminished over the last six years." He adds that when he testified at trial, "it was difficult to remember details after more than six years had passed." English urges the "reliability or the unreliability of witness testimony" "was vital" because the State did not produce "any direct evidence." Despite this assertion, a witness' diminished memory does not "by itself, constitute the type of substantial prejudice" warranting a constitutional claim. *State v. Broughton*, 156 Ariz. 394, 398 (1988) (citation omitted).

¶31        For all of these reasons, English has not shown that the superior court abused its discretion by rejecting his Sixth Amendment speedy trial claim. *See Parker*, 231 Ariz. at 399 ¶ 18; *accord Miller*, 234 Ariz. at 37 ¶ 13.

## II.     English Has Shown No Violation of His Right of Access to the Courts.

¶32     English asserts that, in prison, he lacks "access to any case law at the library or anywhere else," which he asserts left him at a disadvantage when compared to the State in preparing for this appeal. English also claims he was deprived "of full and unfettered access to [his] paper copies of the transcripts of the murder trial."

¶33     In his reply brief on appeal, English asserts he made numerous filings in this appeal explaining how it was unfair that the state prison officials had "full discretion to dictate when and if" he would have access to copies of pertinent documents. He adds that this court "had a symbolic responsibility to recognize and uphold" his constitutional right to have the "tools of fundamental fairness" to adequately prepare for his appeal. In doing so, English claims this court "utterly" failed to do that and "blatantly disregarded" his arguments and then "flat out refused" to order the Arizona Department of Corrections Rehabilitation and Reentry "to take any action that would have helped facilitate" his right to have fundamental fairness in this appeal. English avows his "opening brief was severely handicapped" because he did not have access to documents he needed.

¶34     As noted by the United States Supreme Court decades ago, the right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing either direct access to adequate law libraries or adequate assistance from persons trained in the law." *Knight v. Ybarra & Jackson*, 161 Ariz. 551, 554 (App. 1989) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). In the superior court, English was either represented by counsel or assisted by advisory counsel throughout the proceedings. There is nothing in the record suggesting that he was denied his right of access to the courts there. *See Knight*, 161 Ariz. at 554 ("The effect of access to an appointed advisory counsel normally overcomes any research handicap that restrictions on access to a jail library impose on an inmate.").

¶35     English continues to represent himself on appeal, with the assistance of advisory counsel. In doing so, he has filed an 81-page opening brief and, more recently, a 37-page reply brief with a 608-page appendix. These filings reflect specific dates, cases, authority, knowledge of the appellate rules, and a variety of legal arguments. They reflect access both to the superior court record as well as legal authority. English has not shown his right of access to the courts on appeal have been violated. *See Henry*, 176 Ariz. at 584 ("Due process rights are violated only when a defendant is

denied *all* meaningful opportunity to prepare a defense.") (citation omitted).

### III. English Has Not Shown the Superior Court Judge Was Not Fair and Impartial or that He Was Denied a Fair Trial.

¶36 English alleges the judge who presided over his trial "used her threats of the revocation of [his] pro per status, to arbitrarily control [him], to stop [him] from disagreeing with her, to stop [him] from objecting, and to stop [him] from speaking out in open court about mistreatment that [he] had been subjected to" by "members of local government." English asserts he was intimidated by the judge "to the point where [he] simply stopped objecting." English claims the trial judge spoke to his advisory counsel with kindness but spoke to him with "disgust, disregard, and aversion." English asserts that the judge and his advisory counsel "were engaging in ex parte communications[,]" and asserts the trial judges "unconstitutional conduct constitutes structural error on appeal" and a new trial should be granted. In his reply brief on appeal, English argues "that no person with a reasonable mind in the[] United States of America . . . could ever honestly say or believe that [he] received a 'fair trial.'"

¶37 English previously exercised his right to a preemptory strike of the trial judge initially assigned to the case, and he did not file a notice of change of judge for cause for the judge who was ultimately assigned to preside over his trial. *See* Ariz. R. Crim. P. 10.1(a), 10.2. Nor has he identified facts showing that the judge who presided over his trial was not fair or impartial or that he was denied a fair trial.

¶38 The record does indicate that the trial judge expected English to comply with court rules and to be prepared and told English that, if he did not comply, the court would revoke his waiver of counsel. Those statements, however, were made after the judge had previously admonished English for not being prepared. Moreover, the judge never revoked English's waiver of counsel and he represented himself during the entire trial.

¶39 English also points to the court sustaining objections to evidence he sought to admit, constraining his requests to make a record or offer of proof, and encouraging him to use his advisory counsel. Those actions do not show bias or impartiality. And they fail to establish that English met his burden to show judicial bias or prejudice by a preponderance of the evidence. *State v. Smith*, 203 Ariz. 75, 79 ¶ 13 (2002); *see also State v. Carver*, 160 Ariz. 167, 173 (1989) (the "[a]ppearance of interest

or prejudice is more than the speculation suggested by the defendant"). Instead, English's arguments appear to be based on the trial judge's rulings, which the United States Supreme Court has said "almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted). English has not shown the judge that presided over his trial was not fair and impartial or that he was denied a fair trial.

### IV. English Waived the Remaining Issues Listed in His Opening Brief.

**¶40** English's opening brief lists additional issues, including whether the superior court erred by (1) denying his motion to disqualify the Maricopa County Attorney's Office; (2) denying his motion to recuse the entire Maricopa County Superior Court Judiciary; and (3) denying his motion for new trial. In his reply brief on appeal, English contends that because his right of access to the courts was violated, he could not develop his arguments. In doing so, English asserts that his issues were not "abandoned," they "should not be 'waived'" and asks this court to review all seven issues for fundamental error. English cites to *State v. Granados*, 235 Ariz. 321, 325-26 ¶ 13 (App. 2014) for the proposition that this court should review for fundamental error. The paragraph he points to, however, deals with judicial bias. *Id.* Moreover, English failed to develop these issues in his 81-page opening brief, meaning they are waived. *See State v. Vargas*, 249 Ariz. 186, 190 ¶ 13 (2020) ("[I]f a defendant simply asserts a general claim of error on appeal and fails to develop it, a court is not obligated to consider it.") (citation omitted).

### CONCLUSION

**¶41** English's convictions and resulting sentences are affirmed.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR

12